IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-630-BO-BM

| | | |
|---|---|---|
| MYNETTE MURRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| PRYSMIAN CABLES AND | ) | |
| SYSTEMS USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's partial motion to dismiss for failure to state a claim [DE 16]. Plaintiff timely filed a response [DE 21]. The motion is now ripe for ruling. For the reasons following, defendant's partial motion to dismiss is GRANTED.

## I. BACKGROUND

Plaintiff initiated this action against her ex-employer on October 3, 2025, through filing the complaint in this Court [DE 1]. In the complaint, plaintiff alleged five causes of action: (i) Family Medical Leave Act interference; (ii) Family Medical Leave Act retaliation; (iii) retaliation in violation of 42 U.S.C. § 1981; (iv) disability discrimination, and (v) disability retaliation, in violation of the North Carolina Equal Employment Practices Act. *Id.* Plaintiff filed an amended complaint on October 23, 2025 [DE 7] and a second amended complaint on November 18, 2025 [DE 15]. On December 4, 2025, defendant filed the instant partial motion to dismiss for failure to state a claim [DE 16], moving to dismiss plaintiff's counts (i) and (iii). On December 18, 2025, plaintiff filed a response to the motion to dismiss [DE 21]. Finally, on January 16, 2026, plaintiff

filed a third amended complaint [DE 28]. On January 30, 2026, defendant filed a reply to plaintiff's response to the motion to dismiss [DE 32].

The third amended complaint alleges the following facts. Defendant hired plaintiff on or around May 16, 2022. [DE 28] 3 ¶ 6. Six months later, defendant promoted plaintiff to Human Resources Manager. *Id.* While employed by defendant, plaintiff was diagnosed with anemia and she regularly attended medical appointments for infusions related to that condition. *Id.* at 3 ¶ 7.

In mid-to-late June of 2024, plaintiff "reported concerns about discrimination against of [sic] African American employees" to her direct supervisor, the site director, and the operations representative. *Id.* at 4 ¶ 15. More specifically, plaintiff "expressed her belief that minority employees, specifically African Americans, were being treated differently than Caucasian employees." *Id.* at 5 ¶ 16. Plaintiff "pointed out how this treatment against African American employees amplified a much bigger issue of overall bias . . . occurring within the employee operations . . . which [plaintiff] expressly communicated to be unlawful and needed to be addressed immediately." *Id.* at 5 ¶ 17.

During the first week of August 2024, plaintiff made a complaint to the Ethics Compliance line, in which she "voiced concerns she had about her work environment and interactions with [the site director] and [her direct supervisor]." [DE 28] 5 ¶ 18.

Around the second week of August 2024, plaintiff was hospitalized due to her anemic condition. *Id.* at 5 ¶ 19. Plaintiff immediately notified her supervisor of her need for leave, maintained constant communication while on leave, and provided a definite return-to-work date. *Id.* "In or around the second week of September 2024, while on FMLA-qualifying leave, [plaintiff] requested FMLA paperwork to formally apply for intermittent leave, [for] which she was

2

approved." *Id.* at 6 ¶ 20. Immediately after being approved for FMLA intermittent leave, plaintiff notified defendant of the approval. *Id.* at ¶ 21.

Shortly after, "the way [her supervisors] treated her changed." *Id.* at 6 ¶ 22. They "left her out" of meetings and did not give her information pivotal to her role. [DE 28] 6 ¶ 22. Plaintiff expressed her concern about this treatment. *Id.* at 6 ¶ 23.

On September 27, 2024, defendant terminated plaintiff's employment. *Id.* at 7 ¶ 26. Defendant originally told plaintiff the reason for her termination was that the position was being eliminated, but later told her the reason was actually due to her poor performance. *Id.* at 7 ¶ 27. Plaintiff claims that reason is pretextual, noting that she had received an "Exceeds" and or "Meets" Expectations for each performance evaluation she had received during her employment. *Id.*

## II.  LEGAL STANDARD

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (quotation omitted). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 663. "A document filed *pro se* is to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

### III. DISCUSSION

Defendant moves to dismiss two of plaintiff's claims: "FMLA interference" and "retaliation in violation of 42 U.S.C. § 1981". The Court addresses each in turn.

A. Count I:  Family Medical Leave Act ("FMLA") Interference

Defendant argues that plaintiff's interference claim should be dismissed because it is undisputed that defendant granted FMLA leave to plaintiff.

The FMLA provides covered employees with prescriptive rights, setting substantive floors for conduct by employers and creating entitlements for employees. *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 546 (4th Cir. 2006). "Claims of alleged violations of these prescriptive rights—known as 'interference' or 'entitlement' claims—arise under 29 U.S.C.A. § 2615(a)(1), which states that 'it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.' " *Yashenko,* 446 F.3d at 546.

The FMLA also provides proscriptive rights, "protect[ing] employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Id.* "Known as 'retaliation' or 'discrimination' claims, causes of action alleging violations of these proscriptive rights arise under 29 U.S.C.A. § 2615(a)(2), which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.' " *Id.* (quoting 29 U.S.C.A. § 2615(a)(2)).

To state a claim for FMLA interference, a plaintiff must allege that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that

4

interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch's.*, 789 F.3d 422, 427 (4th Cir. 2015) (citation omitted) *abrogation on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

The parties do not dispute that plaintiff was entitled to an FMLA benefit. Neither do the parties dispute that defendant granted leave to plaintiff, or that plaintiff took that leave. However, whether termination post-leave is grounds for an interference claim is a matter of first impression for this Court.

In support of its position that termination does not support a claim of interference, defendant cites an unpublished opinion from the Western District of North Carolina involving the same pattern as the instant case. *See Fortune v. Gaylor Elec., Inc.*, 2020 WL 6038295, at *1 (W.D.N.C. May 28, 2020) (unpublished). That is, the employer granted medical leave to the plaintiff, but terminated the plaintiff after he returned from taking that leave. *Id.* at *1–2. The court examined a survey of relevant case law to determine whether post-leave termination is grounds for an FMLA interference claim. *Id.* at *5.

The Western District court noted that circuits are split on this issue. *Id.* For instance, the Ninth Circuit has reasoned that termination is grounds for an interference claim. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124–25 (9th Cir. 2001). The Third Circuit has concluded the opposite. *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir. 2017). The Fourth Circuit, however, has not ruled on this issue. *Fortune*, WL 6038295 at *5.

District courts *within* the Fourth Circuit are split. Some have construed 29 C.F.R. § 825.220(c) as authorizing an FMLA interference claim. *See, e.g., Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 870–71 (D. Md. 2000) ("where an adverse employment action is influenced by the taking of family leave, the employer interferes with that employee's exercise of

5

their rights under the FMLA."); *Conner v. Nucor Corp.*, No. 2:14-CV-4145, 2015 WL 5785510, at *15 (D.S.C. Sept. 30, 2015) (unpublished) ("There is authority for allowing a retaliation claim to proceed under either prong of the statute.").

Others disagree. *See, e.g., Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 618–19 (W.D. Va. 2014) (concluding that because the plaintiff had "failed to allege that she was actually denied any FMLA benefits," she failed to state a claim for FMLA interference); *Bullock v. Kraft Foods, Inc.*, No. 3:11CV36-HEH, 2011 WL 5872898, at *4–5 (E.D. Va. Nov. 22, 2011) (unpublished) (concluding the plaintiff could not prevail in her FMLA interference claim, in part, because the employer granted and the plaintiff took FMLA leave before she was terminated) *aff'd*, 501 Fed. Appx. 299 (4th Cir. 2012) (unpublished); *Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494 (W.D. Va. 2018) ("Employees who are terminated after taking FMLA leave and being reinstated to the same position from which they left do not satisfy the ["denial of FMLA rights"] element of a claim for interference. . . . They have not been denied their FMLA rights; instead, they have received all of the benefits to which they are entitled."); *Battle v. City of Alexandria*, No. 1:14-CV-1714, 2015 WL 1650246, at *5 (E.D. Va. Apr. 14, 2015) (stating an employee's remedy for a violation under § 825.220(c) "lies as a retaliation claim and not as an interference claim").

The undersigned finds the latter authorities persuasive on the relevant point. Because plaintiff's complaint does not allege that she was denied any FLMA leave, but rather that she was provided leave and was terminated shortly upon return, plaintiff has not satisfied the second element of an interference claim. Moreover, the cause of action plaintiff attempts to assert through her FMLA interference claim is preserved in her FMLA retaliation claim. *See Battle*, 2015 WL 1650246, at *5. Dismissal of the FLMA interference claim is proper.

6

## B. Count III: Retaliation in Violation of 42 U.S.C. § 1981

Defendant argues plaintiff failed to allege sufficient facts to establish the first and third elements of her Section 1981 retaliation claim. [DE 17] 6–9.

The Supreme Court has instructed that Section 1981 encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008). To state a Section 1981 retaliation claim, a plaintiff must allege "(1) [s]he engaged in a protected activity; (2) [her] employer took adverse action against [her], and (3) a causal relationship existed between the two events." *Ofoche v. Apogee Med. Grp., Va, P.C.*, 815 Fed. App'x 690, 693 (4th Cir. 2020).

When the alleged protected activity is an attempt to vindicate the rights of a minority who is discriminated against, the plaintiff "must be able to identify a right under § 1981 that [s]he vindicated with 'some particularity.' " *Phillips v. Mabe*, 367 F. Supp. 2d 861, 870 (M.D.N.C. 2005) (citing *Albert v. Carobano*, 851 F.2d 561, 572 (2d Cir. 1988)).

Plaintiff alleges she "exercise[d] . . . protected conduct" under the Statute. [DE 28] 10 ¶ 40. However, plaintiff fails to identify any particular right that she vindicated. *See Phillips*, 367 F. Supp. 2d at 870. She does not identify any individual who suffered "direct racial discrimination" or the nature of the discrimination that she opposed. In fact, she only alleged that African Americans were being "treated differently" than Caucasians, [DE 28] 5 ¶ 16, and that she expressed concern such was unlawful. *Id.* at 4–5. Without more, she fails to establish that she engaged in a protected activity, and her allegation of discrimination is merely conclusory. *See Ceus v. City of Tampa*, 803 Fed. App'x 235, 246 (11th Cir. 2020) ("[A]lthough [plaintiff] generally decries racism within [defendant], [plaintiff] does not tie that assertion to any specific

7

discrimination he or anyone else employed by [defendant] faced."); *see also Minority Policy Officers Ass'n of S. Bend v. City of S. Bend*, 801 F.2d 964, 967 (7th Cir. 1986) ("Conclusory allegations of generalized racial bias do not establish discriminatory intent.").

## IV.  CONCLUSION

For the reasons explained above, the Court GRANTS defendant's partial motion to dismiss plaintiff's FMLA interference and 42 U.S.C. § 1981 retaliation claims [DE 16]. The Court hereby DISMISSES those claims.

SO ORDERED, this **23** day of June, 2026.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE